IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br> vs. <br><br> MARY LOUISE DENESE SLAEY, et al., <br><br> Defendants. | CIVIL NO. 06-4930 |

**RUFE, J.**                                                                                              **July 23, 2007**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Pre-Answer Motion to Dismiss the Complaint. After reviewing the Complaint, the parties' briefs, and the applicable law, the Court will **DENY** the Motion, for the reasons set forth below.

**BACKGROUND**

This is an action in which the United States seeks to recover money that it paid to Systems Integration and Management, Inc. ("SIM"), a Virginia-based software company, between late 1999 and late 2001. The United States, through the General Services Administration ("GSA"), awarded SIM a series of government contracts, under which the United States paid SIM roughly $6.5 million to perform certain services. The United States now alleges that SIM and its Chief Executive Officer, Mary Louise Denese Slaey, defrauded the government, receiving much of this money through bribery and overbilling. The United States has filed this action under the False Claims Act ("FCA"), seeking repayment of the amounts that SIM and Slaey allegedly falsely claimed and received.

This civil suit is not the first action taken by the government in this case—the United States also filed criminal charges against Slaey and two of her co-conspirators, Donald Nicholson and Leo Medley. Nicholson, a former GSA official who helped SIM collect on its false claims, pled guilty in this Court on March 6, 2006, to one count of conspiracy to defraud the government, and to one count of bribery.[1] He was sentenced to, inter alia, 15 months' imprisonment. Medley, formerly a SIM Vice President of Operations who participated with Nicholson in the scheme to use SIM invoices to steal government funds, pled guilty in this Court on March 3, 2006, to one count of conspiracy to defraud the government, one count of bribery, and one count of making false claims.[2] He was sentenced to, inter alia, 5 months' imprisonment.

As for Slaey, the United States filed criminal charges against her on December 13, 2005, for one count of conspiracy to defraud the government, one count of making false claims, and five counts of bribery. On August 21, 2006, the Court, acting on the Government's motion, dismissed without prejudice the fraud and bribery counts, and dismissed with prejudice the count of making false claims. The fraud and bribery charges against Slaey were then transferred to the U.S. Attorney for the Eastern District of Virginia based on venue considerations.

On November 7, 2006, the United States filed the civil complaint in this case against Slaey and SIM. When the U.S. Attorney's Office in Virginia then declined to prosecute the criminal case against Slaey, the government served Slaey and SIM with the instant Complaint on March 1,

---

[1] Nicholson pled guilty to two counts of an eight-count indictment filed in case number 05-CR-704, before U.S. District Judge Harvey Bartle: Count 1, a violation of 18 U.S.C. § 286; and Count 8, a violation of 18 U.S.C. § 201(b)(2)(A).

[2] Medley pled guilty to three counts of a four-count indictment filed in case number 06-CR-43, before U.S. District Judge Michael M. Baylson: Count 1, a violation of 18 U.S.C. § 286; Count 2, a violation of 18 U.S.C. § 287; and Count 3, a violation of 18 U.S.C. § 201(b)(1)(B).

2007. The Complaint describes the pattern of fraudulent misconduct in which Slaey, Nicholson, and Medley engaged, and seeks money damages based on violations of the FCA. The Complaint also seeks relief under state-law theories of misrepresentation, breach of contract, unjust enrichment, and payment by mistake. Defendants now ask the Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims are barred under the applicable statutes of limitations. Defendants also argue that the allegations of fraud are not made out with sufficient particularity, and that venue does not lie in this Court for three of the alleged false claims.

**DISCUSSION**

**A. Statute of Limitations**

Defendants argue that the claims are time-barred under the applicable statutes of limitations, and that therefore the Complaint does not state a claim upon which relief can be granted. Although under Federal Rule of Civil Procedure 12(b)(6), the failure to state a claim is a proper basis for a pre-answer motion to dismiss, in general, "a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion."[3] However, under a limited exception to this general rule, the Third Circuit has held that a statute of limitations may serve as the basis for a Rule 12(b)(6) motion to dismiss, "where the complaint facially shows noncompliance with the limitations period."[4] Accordingly, the Court has reviewed the Complaint to determine whether the claims—by the terms of the Complaint itself—are time-barred.

---

[3] Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

[4] Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).

1. Claims under the FCA

31 U.S.C. § 3731(b) is the statute of limitations for the FCA. Under § 3731(b)(1), an FCA claim may not be brought "more than 6 years after the date on which the violation . . . is committed." Therefore, under this rule, because the United States filed the Complaint in this case on November 7, 2006, any violations that Slaey or SIM committed before November 7, 2000 would be time-barred.

The next question is: what constitutes a violation of the FCA, such that the limitations clock begins to run? The Second Circuit has held that the clock under § 3731(b)(1) "begins to run on the date the claim is made, or, if the claim is paid, on the date of payment."[5] In the absence of any Supreme Court or Third Circuit decision on this point, the Court will follow this sensible rule.

Applying this rule, the Court notes that only five of the 28 false claims are alleged to have been either presented to or paid by GSA within this six-year period: (1) three invoices under Task Order K00MS003S00, each in the amount of $89,000, paid by GSA to SIM on November 28, 2000 and November 30, 2000;[6] (2) invoice number 2000-1212, in the amount of $98,466.21, which SIM submitted to GSA on December 15, 2000;[7] and (3) invoice number 2001-0326, in the amount of $52,361.52, paid by GSA to SIM on May 16, 2001.[8]

Of the remaining 23 false claims alleged in the Complaint, 14 of them are alleged to have been either presented to or paid by GSA before November 7, 2000, and are thus time-barred

---

[5] United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1157 (2d Cir. 1993) (internal quotation omitted).

[6] Compl. ¶ 82.

[7] Id. ¶ 64.

[8] Id. ¶ 49.

under § 3731(b)(1).[9] The other nine false claims do not have precise dates attached to them. The allegations listed as "False Claims # 17–20," describe four invoices for a project for which GSA paid SIM $524,211.50, but do not describe when GSA paid SIM.[10] As for "False Claims # 24–28," the Complaint states that they comprise "five separate payments of $170,000 between October 2000 and October 2001."[11] Because November 7, 2000, is the date when the § 3731(b)(1) limitations clock began running, it is not clear which of these claims is time-barred under that provision and which is not.

The FCA, however, also includes a tolling provision under 31 U.S.C. § 3731(b)(2), which provides that even if FCA violations occurred more than six years before the filing of the complaint, they are not time-barred as long as the complaint is filed within "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances."[12] Applying this rule, the FCA claims would be time-barred only if the appropriate governmental official knew of (or

---

[9] They are: (1) invoice # 99-0910, in the amount of $156,105.60, paid by GSA to SIM on November 4, 1999, see Compl. ¶ 33; (2) invoice 99-0918, in the amount of $118,408.65, and invoice 99-1001, in the amount of $224,280.47, both paid by GSA to SIM on December 21, 1999, see id. ¶ 36; (3) invoice number 99-1201, in the amount of $31,901.94, paid by GSA to SIM on February 4, 2000, see id. ¶ 46; (4) invoice number 99-1209, in the amount of $90,040.39, and invoice number 2000-0104, in the amount of $30,080.40, both paid by GSA to SIM on February 28, 2000, see id. ¶¶ 52, 53; (5) invoice number 2000-0208, in the amount of $22,753.36, paid by GSA to SIM on March 16, 2000, see id. ¶ 47; (6) invoice number 2000-0211, in the amount of $57,874.41, paid by GSA to SIM on March 24, 2000, see id. ¶ 44; (7) invoice number 2000-0203, in the amount of $29,995.69, paid by GSA to SIM on April 18, 2000, see id. ¶ 54; (8) invoice number 2000-0212, in the amount of $15,000.00, paid by GSA to SIM on April 28, 2000, see id. ¶ 41; (9) invoice number 2000-0435, in the amount of $49,749.79, paid by GSA to SIM on May 4, 2000, see id. ¶ 57; (10) invoice number 2000-0802, in the amount of $195,000.00, submitted by SIM to GSA on August 1, 2000, see id. ¶ 60; (11) invoice number 2000-0919, in the amount of $65,000.00, submitted by SIM to GSA on September 25, 2000, id.; and (12) invoice number 2000-0713, in the amount of $90,034.34, paid by GSA to SIM on October 25, 2000, see id. ¶ 48.

[10] Id. ¶ 78.

[11] Id. ¶ 87.

[12] 31 U.S.C. § 3731(b)(2).

should have known of) facts material to those claims before November 7, 2003. The government argues that under this tolling provision, the FCA claims are not time-barred, or at a minimum, that the Court cannot decide the issue yet based on the allegations in the Complaint alone.

Defendants counter by pointing out that because GSA's Office of the Inspector General ("OIG") began investigating SIM for possible fraud in August of 2001—long before November 7, 2003—GSA had "constructive knowledge of the claims" at that time, and thus the claims are time-barred.[13] GSA responds by pointing out that although it began interviewing GSA and SIM personnel in 2001 about irregularities with SIM's GSA contracts, this represents merely a starting point of the investigation. Therefore, the government argues that it would be improper to attribute to GSA knowledge of facts material to the fraud at the outset of the investigation. The Government points out that it spent the greater part of 2003 cajoling SIM into complying with a GSA/OIG subpoena that ordered SIM to produce its business records. Accordingly, the government contends that it was not until November 12, 2003, when Slaey gave written assurances that SIM had produced copies of all documents responsive to the subpoena, that knowledge of the facts surrounding the fraud can properly be attributed to the government.

The Court concludes that the applicability of the tolling provision is a partly fact-driven inquiry that cannot be decided at the pleadings stage. In order for the Court to determine the effect of § 3731(b)(2), it must first resolve at least three as-of-yet unanswered questions: First, who is the governmental official charged with responsibility to act (i.e. file a civil action) in this case? Second, which facts are "facts material to the right of action"? And third, when did the relevant governmental official know of—or when should he have known of—these material facts? Thus,

---

[13] See Defs.' Mem. of Law [Doc. # 12], at 5.

whether the running of limitations is tolled is a question for the Court to resolve through a motion for summary judgment, only after the parties have developed a factual record.  Of course, if that record reveals disputed factual issues material to the analysis under § 3731(b)(2), then the jury must decide whether the limitations period is tolled.

Hence, the Court will not dismiss the FCA claims in Counts I, II, and III of the Complaint based on a limitations defense.

2. Claims under State Law

The United States has also brought state-law claims against SIM and Slaey for breach of contract, misrepresentation, unjust enrichment, and payment by mistake.  Defendants argue, and the Government does not dispute, that the limitations periods for these claims are set by 28 U.S.C. § 2415.  Under 28 U.S.C. § 2415(a), "every action for money damages brought by the United States . . . which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues."  Similarly, under 28 U.S.C. § 2415(b), "every action for money damages brought by the United States . . . which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues."  Neither party, however, has briefed the issues of what constitutes accrual of any of these causes of action, nor have they described when they believe that these various rights of action accrued.  The Defendants merely state in a conclusory fashion that the state-law claims are time-barred as a matter of law,[14] while the government does not even address the question of limitations for the state-law claims.  Hence, without guidance on how and when these causes of

---

[14] Id. at 6.

action accrued, and viewing the summary-judgment or trial stage as the more appropriate point at which the Court can determine the effect of a limitations defense, the Court will not dismiss the state-law claims at this time.

**B. Pleading with Particularity**

Defendants also argue that the United States has not pleaded the allegations of fraudulent misconduct with sufficient particularity. While it is true that Federal Rule of Civil Procedure 9(b) commands that all allegations of fraud "shall be stated with particularity," it is clear that the government has done so in this case.

The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[15] The heightened pleading standard not only "gives defendants notice of the claims against them, [and] provides an increased measure of protection for their reputations," but also "reduces the number of frivolous suits brought solely to extract settlements."[16]

Applying this rule, there can be no doubt that the Complaint puts Defendants on notice of the precise misconduct with which they are charged. The Complaint first describes the scheme that Nicholson, Medley, and Slaey used to defraud GSA.[17] It then lists, one by one, each of the 28 alleged fraudulent transactions, describing the type of services that GSA contracted for, the invoice number, and amount paid (or charged) for each. While Defendants correctly point out that

---

[15] Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984).

[16] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

[17] Compl. ¶¶ 17–29.

the Complaint does not provide dates for False Claims 17–20, there is no requirement that the government allege the date for each claim. Even without a particular date, as long as the government "provide[s] an alternative means of injecting precision and some measure of substantiation into the fraud allegations,"[18] then the particularity requirement of Rule 9(b) is satisfied. The description of False Claims 17–20 includes the nature of the work performed, the hours and amount billed, and the invoice numbers.[19] The Court considers this description specific enough to satisfy the purposes of Rule 9(b).

Additionally, Slaey, Nicholson, and Medley were all indicted by a federal grand jury for acts connected to this same pattern of conduct. Nicholson and Medley pleaded guilty to at least some of the charges in those indictments, and are now serving prison sentences imposed under those guilty pleas. This further weakens Defendants' claim that somehow the allegations in the Complaint in this civil case are not particular enough to put them on notice of the precise conduct at issue, or that there is a danger that spurious allegations of misconduct might harm their reputations.

**C. Venue**

Finally, Defendants ask the Court to dismiss all claims arising out of alleged False Claims 21–23, for improper venue. Under 28 U.S.C. § 1391(b), a civil action based on federal-question jurisdiction may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

---

[18] Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).

[19] Compl. ¶¶ 68–78.

> substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The Defendants point out that except for False Claims 21–23, all of the other false claims alleged in the Complaint "were authorized for payment through the [GSA] Finance Service Center in Philadelphia, PA."[20]  False Claims 21–23, on the other hand, were administered by the GSA's Kansas City office,[21] and have no connection to Philadelphia or the Eastern District of Pennsylvania.

28 U.S.C. § 1391(b)(2), however, requires only that a substantial part of the events that give rise to a claim occur in the judicial district.  Here, it is alleged that the GSA in Philadelphia authorized payment for 25 of the 28 alleged false claims.  Thus, a substantial part of the events that give rise to the three FCA claims, as well as the four state-law claims, occurred here in the Eastern District of Pennsylvania.  Hence, venue is proper in this Court.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' Motion in its entirety.

An appropriate Order follows.

---

[20] Id. ¶ 4.

[21] Id. ¶ 81.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **UNITED STATES,**  :<br>  :<br>   **Plaintiff,**  :<br>    vs.  :<br>  :<br>**MARY LOUISE DENESE SLAEY, et al.,**  :<br>  :<br>   **Defendants.**  :<br>  : | **CIVIL NO. 06-4930** |

## ORDER

**AND NOW**, this 23rd day of July 2007, upon consideration of Defendants' Motion to Dismiss [Doc. # 12], and the United States' Opposition thereto [Doc. # 13], it is hereby **ORDERED**, that the Motion is **DENIED**.

BY THE COURT:

/s/ Cynthia M. Rufe
_____
**CYNTHIA M. RUFE, J.**